**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

_____
                                                            )
PAUL LIS and                                        )
DJ PAULIE BROADCASTING LLC,       )
                              Plaintiffs               )
                                                            )   Civil Action No. 11-cv-01057
                                                            )   (AWT)
vs.                                                          )
                                                            )
PAUL DELVECCHIO, JR.,                       )   OCTOBER 24, 2011
495 PRODUCTIONS, VIACOM, INC.,        )
UMG RECORDINGS, INC., FIESTA         )
PALMS, LLC, BASKIN-ROBBINS, INC.,    )
HEARST COMMUNICATIONS, INC.,        )
ROOM960 LLC, and JOHN DOE(S) 1-999  )
                              Defendants            )
_____  )


**DEFENDANT FIESTA PALMS LLC'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................ii-iv

I.     INTRODUCTION .................................................................1

II.    THE RELEVANT FACTS .......................................................2

    A.    The Complaint Does Not Allege Any Facts
        To Support the Exercise of Personal Jurisdiction ..............................2

    B.    Palms Has No Contacts with Connecticut ..........................................2

III.   ARGUMENT.......................................................................3

    A.    The Plaintiffs' Failure to Allege a Single Jurisdictional
        Fact Concerning Palms is Fatal to their Claim ...................................4

    B.    The Plaintiffs Cannot Identify any Conduct by Palms that Brings
        it Within the Narrow Scope of Connecticut's Long-arm Statute.........5

        1.  *Palms Does Not and Has Never Transacted Business
             in Connecticut*..........................................................................6

        2.  *Palms Did Not Cause Any Injury in this District* ......................8

    C.    Jurisdiction over Palms would Violate Due Process..........................9

        1.  *Palms is Not Subject to General Jurisdiction
             in Connecticut*........................................................................10

        2.  *Palms is Not Subject to Specific Jurisdiction
             in Connecticut*........................................................................12

        3.  *It Would be Unreasonable to Require
             Palms to Defend this Action in Connecticut*..............................15

IV.   CONCLUSION........................................................................16

# TABLE OF AUTHORITIES

<u>Cases</u>

*Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Group, Inc.,*
312 F. Supp. 2d 247 (D. Conn. 2004)................................................................3

*Austen v. Catterton Partners V, LP,*
729 F. Supp. 2d 548 (D. Conn. 2010)...........................................................6, 10

*Azamar v. Stern,*
662 F. Supp. 2d 166, 170-171 (D.D.C. 2009)..............................................4, 5

*Bensusan Restaurant Corp. v. King,*
937 F. Supp. 295 (S.D.N.Y. 1996) ......................................................13, 14, 15

*Burger King Corp. v. Rudzewicz,*
 471 U.S. 462 (1985).........................................................................................5

*Chloe v. Queen Bee of Beverly Hills LLC,*
 616 F.3d 158 (2d Cir. 2010)......................................................................10, 12

*Cossaboon v. Maine Med Ctr.,*
600 F.3d 25 (1st Cir. 2010)............................................................................11

*CutCo Indus., Inc. v. Naughton,*
806 F.2d 361 (2d Cir. 1986)...........................................................................3

*Days Inn Worldwide, Inc. v. Patel,*
445 F.3d 899 (6th Cir. 2006)..........................................................................4

*Edburg v. Neogen Corp.,*
 17 F. Supp. 2d 104 (D. Conn. 1998)........................................................11, 12

*Estate of Martinez v. Yavorick,*
455 F. Supp. 2d 115 (D. Conn. 2006)............................................................8

*Greene v. Sha-Na-Na,*
637 F. Supp. 591 (D. Conn. 1986)...............................................................8, 9

*Hagar v. Zaidman,*
797 F. Supp. 132 (D. Conn. 1992) .................................................................6

*Harris v. Wells,*
832 F. Supp. 31 (D. Conn. 1993) ...................................................................5

*Helicopteros Nacionales de Columbia, S.A. v. Hall,*
466 U.S. 408 (1984)......................................................................................10

*Int'l Shoe Co. v. State of Washington*,
326 U.S. 310 (1945) ....................................................................................... 4, 10

*JB Oxford Holdings, Inc. v. Net Trade, Inc.*,
76 F. Supp. 2d 1363 (S.D. Fla. 1999) ...................................................................... 11

*Mashantucket Pequot Tribe v. Redican*,
309 F. Supp. 2d 309 (D. Conn. 2004)............................................................ 4, 13, 14, 15

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)............................................................................ 9, 10, 15

*Milne v. Catuogno Court Reporting Servs., Inc.*,
239 F. Supp. 2d 195 (D. Conn. 2002) ......................................................................... 6

*Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*,
64 F. Supp. 2d 448 (E.D. Pa. 1999).......................................................................... 11

*On-Line Techs. v. Perkin Elmer Corp.*,
141 F. Supp. 2d 246 (D. Conn. 2001) ........................................................................ 11

*Porina v. Marward Shipping Co., Ltd.*,
521 F.3d 122 (2nd Cir. 2008) ................................................................................. 11

*Robinson v. Overseas Military Sales Corp.*,
21 F.3d 502 (2d Cir. 1994)...................................................................................... 3

*Rosenblit v. Danaher*,
206 Conn. 125 (1988)............................................................................................ 7

*Rush v. Savchuk*,
444 U.S. 320 (1980) ............................................................................................. 5

*Savin v. Ranier*,
898 F.2d 304 (2d Cir. 1990).................................................................................... 6

*Shaw v. American Cyanamid Co.*,
534 F.Supp. 527 (D. Conn. 1982) .............................................................................. 5

*Spacey v. Burgar*,
207 F. Supp. 2d 1037 (C.D. Cal. 2001) ..................................................................... 13

*Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*,
427 F. Supp. 2d 1011 (D. Kan. 2006)........................................................................ 13

*Thomason v. Chemical Bank*,
234 Conn. 281 (1995) ............................................................................................... 4

*Vertrue Inc. v. Meshkin*,
429 F. Supp. 2d 479 (D. Conn. 2006) ........................................................................ 6

*Zartolas v. Nisenfeld,*
184 Conn. 471 (1981) ............................................................................................... 6

*Zippo Mfg. Co v. Zippo Dot Com, Inc.*,
952 F. Supp. 1119 (W.D. Pa. 1997) ........................................................................ 13

<u>Statutes</u>

Conn. Gen. Stat. § 52-59b(a) ............................................................................... 6, 8

## I.   <u>INTRODUCTION</u>

Plaintiff Paul Lis ("<u>Mr. Lis</u>") and his company DJ Paulie Broadcasting LLC (together with Mr. Lis, the "<u>Plaintiffs</u>") claim to own a registration that covers the service mark "DJ Paulie."   The Plaintiffs complain to this court that defendant Paul Delvecchio, Jr. ("<u>Mr. Delvecchio</u>") is using the stage name and mark "DJ Pauly D."  In recent years, Mr. Delvecchio, who is also a disc jockey, has become much more well known than Mr. Lis, largely because of Mr. Delvecchio's starring role in the hit television show *Jersey Shore*.  Plaintiffs have therefore sued Mr. Delvecchio for trademark infringement.

Plaintiffs have also sued seven other companies who happen to do business with Mr. Delvecchio. Defendant Fiesta Palms LLC, which operates the Palms Casino Resort ("<u>Palms</u>"), has been sued simply because Mr. Delvecchio performs at venues located at Palms' casino and resort in Las Vegas, Nevada.  For good measure, Plaintiffs also purport to sue 99 additional "John Doe" defendants, who presumably will have a similarly tangential connection to Mr. Delvecchio.

Beyond this, the Plaintiffs' Complaint alleges no facts concerning Palms.  In particular, the Complaint does not identify any basis for this Court to exercise personal jurisdiction over Palms.   There is none.  Palms is not registered to do business in Connecticut.  It does not have an agent for service of process in Connecticut. Palms does not have any employees in Connecticut.  It has never transacted any business in Connecticut.  Finally, Palms does not target any advertising at Connecticut residents.  In short, the Plaintiffs cannot possibly establish that Palms is within the reach of Connecticut's long-arm statute or that it has minimum contacts, or any contacts, with this forum that would permit the exercise of jurisdiction within the limits of Due Process.  Consequently, the claims against Palms should be dismissed.

## II.     THE RELEVANT FACTS

### A. The Complaint Does Not Allege Any Facts
### To Support The Exercise Of Personal Jurisdiction.

The Complaint does not allege any facts that demonstrate that Palms is subject to personal jurisdiction in this District.  Indeed, the Complaint barely addresses the issue.  It states only that the named defendants have either "purposefully committed acts within this District from which these claims arise" or "have committed tortuous [sic] acts outside of the District knowing that such acts would cause injury in this District."  Complaint, ¶ 17.  Apart from this conclusory recitation, the Plaintiffs have nothing more to say.  With respect to Palms, in fact, the Plaintiffs' allegations are about Nevada, not Connecticut: they allege that "the defendant, Paul Delvecchio, Jr., is advertised and promoted as the current resident DJ *at the famous Palms Casino in Las Vegas, Nevada.*"  *Id.* at ¶ 35 (emphasis added).

### B. Palms Has No Contacts with Connecticut.

Plaintiffs can allege no facts about Palms' contacts with Connecticut because it has none.  Palms is a Nevada limited liability company, which operates an upscale resort and casino at 4321 West Flamingo Road, in Las Vegas, Nevada.   See Declaration of Elizabeth Nelson, Esq. ("Nelson Decl."), which is being filed herewith, at ¶ 3.  Palms has no ties to Connecticut.  *Id.* at ¶ 4.  Palms does not own or lease property in Connecticut.  *Id.* at ¶ 5.  It has no offices or facilities in Connecticut.  *Id.* at ¶ 6.  It is not registered to do business in Connecticut and has no agent for service of process located in Connecticut.  *Id.* at ¶¶ 7-8.  Palms has no employees, contractors or third-party vendors located in Connecticut.  *Id.* at ¶ 9.  It has never targeted any marketing campaign or advertising specifically at Connecticut residents.  *Id.* at ¶ 10.

Indeed, Palms has never derived any revenue from business conducted in Connecticut, and no employee or representative of Palms has ever visited Connecticut for business purposes.

2

*Id.* at ¶ 11.  To the extent Palms has any direct contact with Connecticut residents, it is only because those residents choose to travel to Nevada to enjoy the entertainment services Palms offers there.  *Id.* at ¶ 12.

The Plaintiffs attached to their Complaint a printout of an announcement taken from the Press Room section of Palms' website, located at www.palms.com/2011/03/dj-pauly/ (the "Press Release").  *See* Complaint, Exhibit R.  The Press Release simply announces and welcomes DJ Pauly D, from the show *Jersey Shore*, as the latest resident disc jockey performing at venues located at Palms in Las Vegas "throughout 2011."  *See* Nelson Decl., at ¶ 13.  An older version of the Press Release, the one attached to the Complaint as Exhibit R, also referred to a performance that occurred during the "Official Launch Weekend" at a club located at Palms.  *Id.* The Press Release includes a link to allow visitors to "check out DJ Pauly D at his official website – DJPaulyD.com."  *Id.* at ¶ 14.

## III.   ARGUMENT

The Plaintiffs bear the burden of proving that this Court can properly exercise jurisdiction over Palms.  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).  Once jurisdiction is challenged, it falls on the plaintiff to provide the Court with "a *prima facie* showing by its pleadings and affidavits that jurisdiction exists."  *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

To make this showing, the Plaintiffs must first prove that Connecticut's long-arm statute reaches Palms.  *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Group, Inc.*, 312 F. Supp. 2d 247, 252 (D. Conn. 2004).  If the Plaintiffs are able to establish that Palms is covered

by Connecticut's narrowly construed long-arm statute,[1] they must then convince this Court that its exercise of jurisdiction satisfies the Constitution's due process requirements: "[that] the defendants have 'certain minimum contacts with [Connecticut] such that the maintenance of suit [there] does not offend traditional notions of fair play and substantial justice.'" *Id.*, quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted).

The Plaintiffs here cannot make either showing.  The exercise of personal jurisdiction over Palms in Connecticut is not authorized by the state long-arm statute and would violate Due Process.

### A. The Plaintiffs' Failure to Allege a Single Jurisdictional Fact Concerning Palms is Fatal to their Claim.

As a threshold matter, the Plaintiffs must first allege the "***specific facts*** upon which personal jurisdiction can be based." *Azamar v. Stern*, 662 F. Supp. 2d 166, 170-171 (D.D.C. 2009) (emphasis supplied).  In their Complaint, however, the Plaintiffs have improperly consolidated an array of multiple defendants, scattered among at least five states, into a single set of jurisdictional allegations.  *See* Complaint, ¶ 17.  Rather than provide specific facts concerning each defendant, the Plaintiffs have lumped Palms in with residents of Massachusetts, Rhode Island, California and New York, as well as "John Does(s) [sic] 1-999", to claim, without individualized factual support, that ***all*** of them are subject to jurisdiction in Connecticut.  *Id.*

Personal jurisdiction, however, "must be analyzed and established over each defendant independently." *Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006), *citing*

---

[1]      Unlike many jurisdictions, Connecticut's long-arm statute is narrowly construed in that it does not "authorize Connecticut courts to exercise the full measure of 'general' jurisdiction that would have been constitutionally permissible." *Thomason v. Chemical Bank*, 234 Conn. 281, 293 (1995); *see Mashantucket Pequot Tribe v. Redican*, 309 F. Supp. 2d  309, 319 n.9 (D. Conn. 2004) (contrasting the limited reach of Section 59b with the California's long-arm statute, which "permits courts to exercise personal jurisdiction to the full extent permitted by the Fifth Amendment to the United States Constitution").  As set forth below, the Plaintiffs have not and cannot show that Palms comes within this state's long-arm jurisdiction.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Plaintiffs, therefore, may not "aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant." *Stern*, 662 F. Supp. 2d at 171, *citing Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (rejecting aggregation of co-defendants' forum contacts because "the requirements of *International Shoe* must be met as to each defendant over whom a state court exercises jurisdiction"). Moreover, because specific factual allegations are required with respect to each defendant, a plaintiff's "[c]onclusory allegations are not enough to establish personal jurisdiction." *Harris v. Wells*, 832 F. Supp. 31, 34 (D. Conn. 1993), *citing Shaw v. American Cyanamid Co.*, 534 F.Supp. 527, 528 (D. Conn. 1982).

Here, besides the conclusory and overly broad assertion quoted above, the Plaintiffs do not allege a single act by Palms that would confer jurisdiction on this Court. To the contrary, the Plaintiffs' only allegation that pertains specifically to Palms is that "the defendant, Paul Delvecchio, Jr., is advertised and promoted as the current resident DJ at the famous Palms Casino in Las Vegas, Nevada." *See* Complaint, ¶ 35. The only location mentioned is Las Vegas; the Plaintiffs do not allege any connection to the state of Connecticut, let alone make the kind of detailed allegations necessary to justify this Court's exercise of jurisdiction. For those reasons alone, the Plaintiffs' claims against Palms should be dismissed. *See Shaw*, 534 F. Supp. at 528 (granting motion to dismiss where Plaintiff did nothing "more than rely on merely conclusory allegations like those pleaded in . . . [its] complaint").

### B. The Plaintiffs Cannot Identify any Conduct by Palms that Brings it Within the Narrow Scope of Connecticut's Long-arm Statute.

Even if the Plaintiffs were granted leave to amend their Complaint to allege specific facts concerning Palms, however, they still could not make the *prima facie* showing necessary to establish that Connecticut's long-arm statute reaches Palms in Las Vegas, Nevada.

Connecticut's long-arm statute, codified at Conn. Gen. Stat. § 52-59b(a),[2] authorizes this Court to exercise jurisdiction over a foreign defendant only if that defendant has "(1) transacted business in Connecticut; (2) committed a tort within the State of Connecticut; or (3) committed a tort outside of Connecticut that caused injury to Plaintiff in Connecticut." *Vertrue Inc. v. Meshkin*, 429 F. Supp. 2d 479, 489 (D. Conn. 2006).  The Plaintiffs here cannot satisfy any of these elements.

<ol><li>*Palms Does Not and Has Never Transacted Business in Connecticut.*</li></ol>

In Connecticut, "[t]he term 'transacting business,' as used in § 52-59b(a)(1), is **not** broadly interpreted . . ." *Vertrue*, 429 F. Supp. 2d at 489-490, citing *Milne v. Catuogno Court Reporting Servs., Inc.*, 239 F. Supp. 2d 195, 198 (D. Conn. 2002).  To the contrary, even where a foreign defendant makes sales to or enters into contracts with Connecticut residents, they are not necessarily "transacting business" under Connecticut's long-arm statute.  *See Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990) (Kentucky investor who obtained financing from a Connecticut resident in order to purchase stake in New York business did not transact business in Connecticut, notwithstanding that he executed a promissory note payable there); *Hagar v. Zaidman*, 797 F. Supp. 132, 135 (D. Conn. 1992) (California defendant did not transact business under 52-59b even though he "conduct[ed] a portion of ongoing contract negotiations in Connecticut").  Rather, Connecticut requires plaintiffs to show that their specific "cause of action **arose from** the defendants' transaction of business within this state." *Zartolas v. Nisenfeld*, 184 Conn. 471, 477 (1981) (emphasis supplied).  Here, the Plaintiffs have not even attempted to

---

[2]    Connecticut has a separate long-arm statute, Conn. Gen. Stats. § 33-929(e)-(f), that applies to foreign corporations.  Although Connecticut trial courts have held otherwise, this District recently concluded that Section 52-59b, which has a slightly broader reach than Section 33-929,was intended to apply to LLCs.  *See Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d, 548, 554, 559 (D. Conn. 2010).  Because Palms is not subject to this Court's jurisdiction under any of Connecticut's long-arm statutes, it focuses herein on the broader statute.

allege facts indicating that Palms transacted *any* business in Connecticut, let alone that any such transaction bears the requisite relationship to the Plaintiffs' claims.  Indeed, even if the Plaintiffs could somehow establish that Connecticut residents have, in fact, attended one of Mr. Delvecchio's performances in Nevada, that is not enough to satisfy Connecticut's long-arm statute, as discussed below.

Under Connecticut law, where a Connecticut resident merely contracts with a foreign defendant to provide services that are performed *outside* of Connecticut, the foreign defendant is deemed *not* to have transacted business in Connecticut for purposes of the long-arm statute.  In *Rosenblit v. Danaher*, 206 Conn. 125 (1988), for example, Connecticut residents hired a Massachusetts attorney to perform services for them in Massachusetts, including litigating a claim in the United States District Court for the District of Massachusetts.  206 Conn. at 128-29.  When that claim was dismissed on summary judgment, the plaintiffs sued their former counsel for malpractice, among other claims.  *Id.*

Notwithstanding that the plaintiffs' cause of action arose from the attorney's acceptance of business from Connecticut residents, and that the attorney had himself traveled to Connecticut to meet with his clients on at least one occasion (contacts far greater than anything the Plaintiffs could establish here), the attorney's contacts with Connecticut were insufficient to subject him to its jurisdiction.  *Id.*  Rather, because the attorney's services were all performed in Massachusetts and concerned events occurring in Massachusetts, he had not "transacted business" in Connecticut sufficient to satisfy its long-arm statute.  *Id.* at 140-42. ("With this conclusion that the statutory [long-arm] requirements were not met, it is not necessary for us to decide whether the exercise of jurisdiction over Danaher violated constitutional principles of due process.").  This Court recently applied *Rosenblit* in a similar case, refusing to exercise personal jurisdiction

over an Ohio attorney who contracted to provide legal services in Ohio for Connecticut residents. *See Estate of Martinez v. Yavorick*, 455 F. Supp. 2d 115, 120-121 (D. Conn. 2006).

Here, the Plaintiffs have not alleged that Palms transacted ***any*** business in Connecticut, let alone business that gave rise to their current claims.  The only allegation that is even remotely relevant refers to online advertisements that Mr. Delvecchio will perform as resident DJ ***at Palms in Las Vegas***.  The Plaintiffs cannot, however, make any connection between those performances and this forum.  Indeed, to the extent any Connecticut residents enjoyed those performances, which the Plaintiffs do not even allege, they necessarily did so by traveling from Connecticut to Nevada.  Any alleged conduct in Connecticut in anticipation of that trip was "ancillary to the transaction of business in a foreign state," where the venues are located and the entertainment services were rendered.  *See Yavorick*, 455 F. Supp. 2d at 122.  Thus, Palms has not transacted business in Connecticut within the meaning of Section 52-59b, and is not subject to jurisdiction in this forum.

## 2. *Palms Did Not Cause Any Injury in this District*.

The Plaintiffs recite in conclusory fashion that all defendants have "committed tortuous [*sic*] acts outside of the District knowing that such acts would cause injury in this District," Complaint, ¶ 17, but they make no allegations identifying what Palms supposedly did, or how those acts supposedly caused any injury, let alone how their purported harm amounts to an injury ***in this District***.  *See* Conn. Gen. Stats. § 52-59b(a)(3) (setting forth requirements for exercising personal jurisdiction over "any nonresident individual . . . who . . . commits a tortious act outside the state causing injury to person or property within the state");[3] *Greene v. Sha-Na-Na*, 637

---

[3]     The Plaintiffs also conclusorily invoke Section 52-59b(2), which provides jurisdiction over foreign defendants who commit tortious acts within this District.  *See* Complaint, ¶ 17.  Because the Plaintiffs nowhere allege that Palms engaged in any conduct of any kind in Connecticut, however, and Palms has not engaged in any such conduct, let alone tortious conduct, Section 52-59b(2) lacks even an arguable application to Palms in this case.

F.Supp. 591, 597 (D. Conn. 1986) ("the threshold question under Section 52-59b(a)(3) is whether any injury to the plaintiff occurred in Connecticut.").

The minimal facts alleged by the Plaintiffs show, rather, that any injury occurred outside Connecticut in Nevada.  First, the law is clear that a Plaintiffs' "residence in the state is not enough; the *determinative factor* is evidence of direct economic injury to the plaintiff within the state."  *Sha-Na-Na*, 637 F. Supp. at 597 (emphasis supplied) (internal citations and quotations omitted).  In *Sha-Na-Na*, a Connecticut resident alleged that his former business partners and band-mates were infringing his trademark in the band name "Sha-Na-Na."  *Sha-Na-Na*, 637 F. Supp. at 592.  Like the Plaintiffs here, the plaintiff in that case based his claim of jurisdiction on the mere fact that he resided in Connecticut by alleging that the harm he claimed to have suffered, such as his alleged loss of income and damage to his reputation, was felt by him in Connecticut.  *Id.* at 597-98.  The court refused to exercise jurisdiction because the "critical events" associated with the dispute, including all of the new "Sha-Na-Na" band's performances, "took place outside Connecticut, notably in California and Nevada."  *Id.* at 598.

So it is here.  To the extent that there are any "critical events" in this case, they occurred in Nevada.  Nelson Decl., ¶ 15.  The Plaintiffs do not and cannot allege a single event occurring in Connecticut that gave rise to their alleged injuries.  Consequently, they cannot satisfy Connecticut's long-arm statute and this Court cannot exercise jurisdiction over Palms.

### C.  Jurisdiction over Palms would Violate Due Process.

In any event, the assertion of jurisdiction over Palms in this case would violate the Fifth Amendment's Due Process Clause, both because Palms lacks sufficient "minimum contacts" with Connecticut, and because it would be unreasonable to require Palms to defend the Plaintiffs' allegations in Connecticut.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d

560, 567 (2d Cir. 1996). Again, the Plaintiffs carry "the burden of proving that [Palms] had minimum contacts with Connecticut such that the maintenance of this suit against [Palms] in Connecticut will not offend traditional notions of fair play and substantial justice." *Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 553 (D. Conn. 2010), citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1954). Thus, the Plaintiffs must show not only sufficient "minimum contacts" by Palms to support this Court's exercise of jurisdiction, but also that it would be reasonable to require Palms to defend this action in Connecticut. *Metro. Life*, 84 F.3d at 575 (affirming dismissal where "exercise of personal jurisdiction would be decidedly unreasonable"). The Plaintiffs cannot carry that burden here.

For purposes of conducting the first step of the due process inquiry, courts distinguish "between 'specific' jurisdiction and 'general' jurisdiction." *Chloe v. Queen Bee of Beverly Hills LLC*, 616 F.3d 158, 164 (2d Cir. 2010). "Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Id.*, quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8 (1984). "A court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.*, citing *Helicopteros*, 466 U.S. at 414-15, n. 9.

### 1.   *Palms is Not Subject to General Jurisdiction in Connecticut.*

To establish that Connecticut has general jurisdiction over Palms, the Plaintiffs must show that Palms has "continuous and systematic" business contacts within this District. *Metropolitan Life*, 84 F.3d at 565, quoting *Helicopteros*, 466 U.S. at 414-416, n. 9. As set forth

above, the Plaintiffs have failed to identify *any* contacts of any kind between Palms and the state

of Connecticut, let alone continuous and systematic contacts.

The Press Release about Mr. Delvecchio on Palms' website does not give rise to general

jurisdiction in Connecticut.  Indeed, a defendant's mere presence on the internet is never enough

to justify a court's exercise of general jurisdiction.  *See Edburg v. Neogen Corp.*, 17 F. Supp. 2d

104, 115 (D. Conn. 1998) ("If jurisdiction were to be based upon a defendant's mere presence on

the Internet, this would lead to a defendant's being subjected to jurisdiction on a worldwide basis

and would eviscerate the personal jurisdiction requirements as they currently exist.").[4]  Rather, in

order to justify the exercise of jurisdiction over a foreign defendant, there must be "something

more to indicate that the defendant purposefully (albeit electronically), directed his activity in a

substantial way to the forum state."  *Id.* (internal quotations and citations omitted).

Here, Palms' website is equally available to anyone, in any state; it is not evidence that

Palms has continuously, systematically, and purposefully availed itself of the privilege of doing

business specifically in Connecticut.[5]  *See On-Line Techs. v. Perkin Elmer Corp.*, 141 F. Supp.

2d 246, 268 (D. Conn. 2001); *see also JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp.

---

[4]     Particularly given the current ubiquity of online activities, courts have repeatedly acknowledged the absurdity of subjecting defendants to general jurisdiction solely because they operate a website that is visible in a given jurisdiction.  *See*, *e.g.*, *Cossaboon v. Maine Med Ctr.*, 600 F.3d 25, 33 (1st Cir. 2010) ("Given the omnipresence of internet websites, such a rule would eviscerate the limits on personal jurisdiction over out-of-state defendants.") (internal quotations and citations omitted); *Edberg v. Neogen Corp.*, 17 F. Supp. 2d. 104, 115 (D.Conn. 1998) ("If jurisdiction were to be based upon a defendant's mere presence on the Internet, this would lead to a defendant's being subjected to jurisdiction on a worldwide basis and would eviscerate the personal jurisdiction requirements as they currently exist."); *Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 451 (E.D. Pa. 1999) ("To hold that the possibility of ordering products from a website establishes general jurisdiction would effectively hold that any corporation with such a website is subject to general jurisdiction in every state. The court is not willing to take such a step.").

[5]     Requiring some form of purposeful availment is necessary with respect to both general and specific personal jurisdiction, but a more stringent standard governs general jurisdiction, because the availment must also be systematic and continuous.  *See Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 128 (2nd Cir. 2008); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (noting that general jurisdiction minimum contacts test is "more stringent," "[b]ecause general jurisdiction is not related to the events giving rise to the suit").

2d 1363, 1367 (S.D. Fla. 1999) (case law requires "contacts that tie the defendant to a particular state, not those that merely link with equal strength the defendant to all states.").   To the contrary, Palms does business almost exclusively in Nevada, where residents from around the world travel to enjoy everything the resort has to offer.   Palms may have done business *in Nevada* with Connecticut residents, but by doing so it has not availed itself of the privilege of doing business in Connecticut.   *See Edberg v. Neogen Corp.*, 17 F.Supp.2d 104, 112 (D. Conn. 1998) ("the courts have repeatedly held that jurisdiction may not be manufactured by the conduct of others.").

The Plaintiffs have not alleged, and could not allege, any systematic and continuous contacts by Palms that subject it to personal jurisdiction in Connecticut.

2.       *Palms is Not Subject to Specific Jurisdiction in Connecticut.*

Similarly, the Plaintiffs have not established, and cannot, that Palms has any contacts with Connecticut that justify the exercise of specific jurisdiction, which requires the Plaintiffs to specifically show that their cause of action "*aris[es] out of or relate[s] to* [Palms'] contacts with the forum."   *Chloe v. Queen Bee of Beverly Hills LLC*, 616 F.3d 158, 164 (2d Cir. 2010) (emphasis supplied).   The analysis here fails at the outset because, as discussed above, the Complaint does not specifically identify any contacts with Connecticut.

The Plaintiffs do not allege that their claims for trademark infringement against Palms arose from any contact that Palms specifically directed at the state of Connecticut.   Palms' allegedly wrongful conduct – specifically, the Press Release on its website announcing Mr. Delvecchio's residency – was not targeted at residents of Connecticut as opposed to any other state.   *See Edberg v. Neogen*, 17 F. Supp. 2d 104, 114 (D. Conn. 1998) (denying jurisdiction in absence of "evidence that th[e] Web site advertisement was directed at Connecticut anymore

[sic] than anyplace else in the nation."); *see also Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1011, 1021-1022 (D. Kan. 2006) (no jurisdiction over defendant's foreign website, through which it attacked the plaintiff, its business competitor, located in the forum state, because no fact suggested that the "defendants purposefully directed their activities" at that forum, as opposed to more broadly at all states); *Spacey v. Burgar*, 207 F. Supp. 2d 1037, 1045-1047 (C.D. Cal. 2001) (court could not exercise jurisdiction over website whose domain name allegedly misappropriated actor's identity, because site was targeted at fans throughout world and not specifically at forum).

Similarly, Palms' passive Press Release is not a contact that can support specific jurisdiction. To determine whether internet-based contacts are sufficient to confer specific jurisdiction, courts consider a defendant's operation of a website along a continuum of so-called "interactivity." *See Mashantucket Pequot Tribe v. Redican*, 309 F. Supp. 2d 309, 316-18 (D. Conn. 2004). "At one end of the spectrum [of interactivity] are cases where individuals can directly interact with a company over their Internet site, download, transmit or exchange information, and enter into contracts with the company via computer." *Id.* at 317. "At the other end of the continuum are cases where the defendant has only advertised on the Internet, and where another medium such as the telephone or mail is necessary to contact the seller; in the case of such 'passive' sites, personal jurisdiction usually does not lie." *Id.*, citing *Bensusan Restaurant Corp. v. King,* 937 F. Supp. 295 (S.D.N.Y. 1996). Along this spectrum, courts must "determine whether jurisdiction is proper by 'examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.'" *Id.*, quoting *Zippo Mfg. Co v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

Here, the online Press Release attached to the Complaint is completely passive.  It merely advertises the fact that Pauly D will be performing at Venues located at Palms "throughout 2011."  Nelson Decl., ¶ 13.  Visitors cannot interact in anyway with that webpage, and, indeed, they are directed away from Palms.com to DJ Pauly D's site.  *Id.* at ¶14.  This type of passive site does not create specific personal jurisdiction.  *Mashantucket,* 309 F. Supp. 2d at 317.

Indeed, courts in this Circuit analyzing precisely this type of purported jurisdictional contact (i.e. online advertisement of allegedly infringing performances) have expressly found it an insufficient basis for exercising personal jurisdiction.  For example, in *Bensusan Restaurant Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997), a plaintiff residing in New York alleged that a Missouri restaurant and night club had infringed its trademark.  The District Court dismissed the case, finding that the defendant's website, which was the only alleged contact between the defendant and the forum, could not serve as a basis for personal jurisdiction.  Although the website "contain[ed] general information about the club in Missouri as well as a calendar of events and ticketing information," online users wishing to purchase tickets were required to call the venue or visit a ticket outlet, and then pick up tickets on the night of the show.  *Id.* at 297.  Because "there [we]re no allegations that [the defendant] actively sought to encourage New Yorkers to access his site, or that he conducted any business . . . in New York," he was not subject to personal jurisdiction in New York.  *Id.* at 301.

The same is true here, with respect to jurisdiction.[6]  The Press Release and webpage identified by Plaintiffs, and on which they presumably base their claims, simply provides general information about Mr. Delvecchio's residency at venues located at Palms.  The Press Release and webpage do not allow a visitor to purchase tickets; visitors who wish to do so must contact

---

[6]      A significant distinction from the *Bensusan* case is also present here, given that the night club in that case was the alleged direct infringer, as opposed to merely one of the venues at which the direct infringer performed.

the appropriate venue or find another ticket outlet.  If a visitor does purchase tickets, she must travel to Las Vegas to see Mr. Delvecchio perform.  This is precisely the kind of passive website that does not give rise to specific jurisdiction.  *Mashantucket,* 309 F. Supp. 2d at 317; *Bensusan*, 937 F. Supp. at 299.

> ### 3.   *It Would be Unreasonable to Require Palms to Defend this Action in Connecticut.*

Because Palms lacks minimum contacts with Connecticut, the reasonableness inquiry requires only brief consideration.  *See Metropolitan Life*, 84 F.3d at 568 ("if the constitutionally necessary first-tier minimum [showing of jurisdiction] is lacking, the inquiry ends").   In analyzing the reasonableness of exercising personal jurisdiction, courts "evaluate the following factors . . . : (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."  *Id.*  On balance, all of these factors favor dismissal of this action as against Palms.

With respect to the first factor, the burden of requiring Palms, a Nevada limited liability company located more than 2,500 miles away with no agents or activities in Connecticut, to litigate the Plaintiffs' claims here in this District is indisputably substantial.  As to the second factor, Connecticut's only interest in this litigation is the presence of the Plaintiffs in this District.  All other parties are foreign individuals or entities, with no apparent ties to Connecticut, and no apparent activities directed at Connecticut.   Moreover, it is unclear whether any witnesses, other than Mr. Lis himself, are located in Connecticut.  With respect to the third and fourth factors, while the Plaintiffs may prefer to litigate on their home turf, it is far from clear

that Connecticut will, in fact, provide the most efficient resolution to their claims, given that no other party is located in here.  As for the fifth factor, this case does not implicate any "substantive social policies."

In short, even setting aside the fact that Palms lacks the minimum contacts necessary to be subject to jurisdiction in this district, it would be patently unreasonable to require Palms to defend this action in Connecticut.  This case simply offers no justification for imposing such an undue burden on an unrelated foreign defendant like Palms.

## IV.   **CONCLUSION**

Palms is not subject to personal jurisdiction in this Court because it has not transacted business in Connecticut within the meaning of the long-arm statute and because it lacks any meaningful contacts with this forum.  Accordingly, Palms requests that this Court dismiss the claims against it under Fed. R. Civ. P. 12(b)(2).

Respectfully submitted,

**FIESTA PALMS LLC,**
**D/B/A PALMS RESORT CASINO,**

By its attorneys,

/s/ Edward J. Naughton
Edward J. Naughton (ct 20822)
Steven M. Veenema (phv 04987)
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
617.856.8200
enaughton@brownrudnick.com
sveenema@brownrudnick.com

Dated:  October 24, 2011

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Edward J. Naughton
Edward J. Naughton

Dated: October 24, 2011

# 1863799 v1 -

17