## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **PAUL LIS, et al** | : | **No. 11-cv-01057-AWT** |
| **plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PAUL DELVECCHIO, et al** | : | **DECEMBER 14, 2011** |
| **defendants** | | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION
### TO DEFENDANT FIESTA PALMS' MOTION TO DISMISS

### I.    INTRODUCTION

This action arises under the Trademark laws of the United States, 15 U.S.C. 1051 and 1125.  Specifically, plaintiff alleges that he adopted the mark "DJ Paulie" in 1973 and has used it continuously since.  Plaintiff's trademark was formally registered in January, 2010.  Defendant Delvecchio subsequently filed an application for the name "DJ Pauly D", but was denied based upon the likelihood of confusion with plaintiff's mark.

Defendant Fiesta Palms ("Palms") is sued as a contributory infringer.  Defendant Palms "purposefully committed acts within the District from which these claims arise and/or have committed tortuous acts outside of the District knowing that such acts would cause injury in this District."  See Para. 17.  The Complaint further alleges that Defendant Palms has had "continuous, systematic and routine business contacts within this District and the State of Connecticut (Para. 17) and that "Paul Delvecchio, Jr. is advertised and promoted as the current resident DJ at the famous Palms Casino in Las Vegas, Nevada, which advertising is attached."  See Para. 35.

Two of the web pages appended to the complaint evidence Palms promoting their "resident DJ".  See R1 & R2.  The website provides a toll free number, "866-940-7772".  As is readily apparent from Exhibits R1 & R2, the website is "active" and "commercial", acting as an online store for Palms' products and allowing the visitor to make purchases directly through the site.  See R1 & R2.   These web pages offer internet visitors the opportunity to book a flight and hotel directly via the site, while at the same time taking the opportunity to market its "nightlife", "gaming" "dining", "accommodations", etc.  See R1; R2.  Indeed, the current version of the website offers a "GYM, TAN, LIQUOR" promotional package that can be purchased, making reference to Defendant Delvecchio's catch phrase "GTL".

## II.      PLAINTIFF'S ALLEGATIONS ARE SUFFICIENT TO PERMIT DISCOVERY

In Ball v. Metallurgie Hoboken-Overpelt, 902 F.2d 194 (2d. Cir. 1990) the Second Circuit set forth the analytical framework for deciding jurisdictional challenges.  The Court said:

> The nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, *see Fed.R.Civ.P. 11*, legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations.  After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.

Id. at 197.  The Court further stated that "if the defendant is content to challenge only the sufficiency of plaintiff's of plaintiff's factual allegation, in effect demurring by filing a Rule 12 (b)(2) motion, the plaintiff need persuade the Court only that its factual allegations constitute a prima facie showing of jurisdiction."  Id. at 197.

As noted above, plaintiff has alleged that defendant has: committed tortious acts within

Connecticut (Para 17); committed tortious acts outside Connecticut knowing that that injury

would be caused within (Para 17); had continuous, systematic and routine business contacts with

Connecticut (Para 17); and advertised and promoted "DJ Pauly D" as its resident DJ via its

website (Para 35).  Although not alleged in the body of the Complaint, the web pages appended

to the Complaint show an effort to market to a national audience, and then capture that audience

through the website by allowing the visitor to purchase Palms products.  As will be clear from

the discussion below, these allegations, if true, undoubtedly amount to personal jurisdiction.  At

this stage, plaintiff's allegations are sufficient.  Once plaintiff has had an opportunity to conduct

jurisdictional discovery, a higher burden will then be required by the analytical framework set

forth in <u>Ball</u>.

## III.    PERSONAL JURISDICTION

Although plaintiff's allegations are sufficient at this stage of discovery, it is nonetheless

helpful to review the case law which is the basis for jurisdiction.

### A.  CONNECTICUT'S LONG-ARM STATUTES ALLOW THIS COURT TO EXERCISE JURISDICTION OVER THE DEFENDANT

Connecticut has two statutes which appear to independently confer jurisdiction over

Defendant Palms.  C.G.S. § 52-59b(a) states in relevant part as follows:

> As to a cause of action arising from any of the acts enumerated in this
> section, a court may exercise personal jurisdiction over any nonresident
> individual, foreign partnership or foreign voluntary association, or over
> the executor or administrator of such nonresident individual, foreign
> partnership or foreign voluntary association, who in person or through an
> agent: (1) *Transacts any business within the state*; (2) *commits a tortious
> act within the state*, except as to a cause of action for defamation of
> character arising from the act; (3) *commits a tortious act outside the state
> causing injury to person or property within the state, except as to a cause*

> *of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;* (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

Alternatively, C.G.S. § 33-929(f), states in relevant part as follows:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state...whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: . . . (2) *out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business,* whether the orders or offers relating thereto were accepted within or without the state; or (4) *out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.*

C.G.S. §33-929(f) (emphasis added).

Plaintiff's Complaint alleges Trademark infringement, Unfair Competition, and violations under the Connecticut Unfair Trade Practices Act.  Jurisdiction is easily satisfied in this case because:

1.    Defendant has committed a tort within via its infringing website accessible to Connecticut resident.   See §52-59(b)(a)(2) or §33-929(f)(4);

2.    Defendant committed a tort outside the state and regularly solicits business in this State.  See §52-59(b)(a)(3)(A);

3.    The cause of action arises out of business solicited in this state.  §33-929(f)(2).

1.      **Tortious Act Within State.**

In <u>Licciardello v. Lovelady</u>, 544 F.3d 1280 (11th Cir. 2008), plaintiff, a florida resident sued defendant, a non-resident, claiming that defendant used plaintiff's trademarked name on a website.  <u>Id</u>. at 1282-83.  The Court began its analysis with Florida's long-arm statute.  <u>Id</u>. at 1283.  Much like Connecticut's long-arm statutes, jurisdiction is permissible over a person who "commits[s] a tortious act within this state" <u>Id</u>. at 1283, citing Fla. Stat. §48.193(1)(b).  The plaintiff in <u>Licciardello</u> claimed that defendant's "creation in Tennessee of a website containing allegedly infringing and deceptive use of [plaintiff's] trademark is a tortious act 'within this state' as contemplated by the statute because the injury from trademark infringement occurs where the holder resides." <u>Id</u> at 1283.  "[A]lthough the website was created in Tennessee, the Florida long-arm statute is satisfied if the alleged trademark infringement on the website caused injury in Florida.  <u>Id</u>. at 1283.  We need not decide whether trademark injury necessarily occurs where the owner of the mark resides . . . because *in this case the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida.*" <u>Id</u>. at 1283 (emphasis added).

Although plaintiff has been unable to locate Second Circuit or Connecticut case holding that Trademark infringement is a form of tortious conduct within the state, an analogous decision was found holding that *patent infringement* is tortious conduct with the meaning of Connecticut's long arm statute.  <u>See</u> <u>Simoniz v. Motor City Wash Works, Inc.</u>, 1007 U.S. Dist. LEXIS 83305,

*7  (D.Conn. 2007) (Hall, J.).  The Court held that "patent infringement is tortious conduct within the meaning of Connecticut's long-arm statute." Id. at * 8.  In concluding that the tortious conduct occurred *in Connecticut*, the Court relied in part upon the fact that defendant advertises its product on an "interactive internet website, which is accessible to Connecticut residents." Id. at 9.

Here, plaintiff is alleging that defendant "by promotion, production, performance and distribution of goods and services bearing the marks DJ PAULIE, DJ PAULY D and/or DJ PAULY D have unlawfully and willfully infringed Plaintiff's marks in violation of Plaintiff's exclusive rights herein" (Complaint, Para. 44) and that this was done via promotion of the trademarked name via its website (Complaint, Para. 36).  This alone is enough to establish jurisdiction.

### 2.      Tortious Acts Outside the State.

Even if the Court were to conclude that plaintiff has not adequately alleged that defendant committed tortious acts within this state, plaintiff also relies on the sections of the long-arm statutes that provide for jurisdiction where a tort is committed outside the state.  Jurisdiction is triggered nonetheless because defendant regularly solicits business in this State.  See §52-59(b) (a)(3)(A); and because he cause of action arises out of business solicited in this state.  See §33-929(f)(2).

Connecticut District courts have held that advertising via the internet is sufficient to satisfy Connecticut's long-arm statute.  In Inset Systems, Inc. v. Instruction Set, Inc., 937 F. Supp. 161 (1996) the plaintiff, a Connecticut corporation, and the holder of the registered trademark "INSET" brought suit against a foreign corporation that was advertising its goods and

services via a domain name, "INSET.COM", alleging trademark infringement.  Beginning its

analysis with C.G.S. § 33- 411(c),[1] the Court concluded that "advertising via the Internet is

solicitation of a sufficient repetitive nature to satisfy subsection (c)(2) of the Connecticut long-

arm statute . . ." <u>Id</u>. at 164.  The Court further reasoned that  "[defendant] directed its advertising

activities via the internet and its toll-free number toward not only the state of Connecticut, but to

all states.  The internet as well as toll-free numbers are designed to communicate with people and

their businesses in every state.  Advertisements on the Internet can reach as many as 10,000

Internet users within Connecticut alone.  Further, once posted on the Internet, unlike television

and radio advertising, the advertisement is available continuously to any Internet user.

[Defendant] therefore purposefully availed itself of the privilege of doing business within

Connecticut."  <u>Id</u>. at 165.

In a more recent case, <u>ICG America v. Wine of the Month Club, Inc.</u>, 2009 U.S. Dist.

LEXIS 77151 (D.Conn. 2009), the plaintiff, a Connecticut company, brought a declaratory action

against a foreign corporation seeking permission to advertise under a registered phrase "wine of

the month club.".  The defendant filed a motion to dismiss claiming that it had no contacts with

Connecticut.  The Court analyzed the issue via §33-929(f), and in particular subsection (2)'s

language regarding "repeated business solicited in Connecticut by mail or otherwise."

Much like Defendant Palms, the defendant in the <u>ICG America</u> claimed that "neither the

websites nor Defendant's advertisements specifically target Connecticut."  <u>Id</u>. at *8-9.  The Court

---

[1] C.G.S. §411(c) has been repealed.  It provided in relevant part: "Every foreign corporation shall be subject to suit in this state, by a resident of this state . . .whether or not such person is conducting business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising . . . (2) out of any business solicited in this state . . . if the corporation has repeatedly so solicited business, whether the order or offers relating thereto were accepted within or without the state . . ."  This provision is for all practical purposes captured in §33-929(f)(2) and §52-59b(a) (3).

rejected this argument. Id. at *9. "Because Defendant's website sells its products, Defendant's website is interactive and commercial." Id. at *10. The Court ultimately concluded that "[i]nteractive, commercial websites permit personal jurisdiction to be exercised over defendant". Id. at *10, citing Zippo v. Mfg. Co. V. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124-25 (W.D.Pa. 1997). See also Best Van Lines, Inc. v. Walker, 490 F.3d 239, 251-52 (2d Cir.2007) (explaining that the level of interactivity of a website tends to show whether the defendant is transacting business or purposefully availing itself of the privilege of conducting activities in the forum state).

Although plaintiff need only make allegations at this stage, it is actually apparent already from the defendant's website that jurisdiction is appropriate at this stage. The defendant's website clearly targets a national audience, and seeks to get its business. Given the breadth of the internet, and the self-evident fact that Palms is targeting a national audience, it is a fair inference that Connecticut residents have visited the website and indeed purchased accommodations via the website. Plaintiff is confident that discovery will yield even greater ties to Connecticut, and only seeks the opportunity to establish same.

3. **Minimum Contacts**

**Reasonably Anticipate.**

The same contacts that trigger the long-arm statute satisfy the Due Process requirements. For example, in a trademark infringement case involving a website, Judge Covello concluded that a company that directs its advertising to "all states" via the internet and a toll free number should "reasonably anticipate the possibility of being hailed in to Court here." Inset Systems, Inc. v. Instruction Set, Inc., 937 F. Supp. 161 (1996). Similarly, in another trademark case

involving a website, Judge Dorsey concluded that "defendant purposefully availed itself of the privilege of doing business in Connecticut. <u>ICG America v. Wine of the Month Club, Inc.</u>, 2009 U.S. Dist. LEXIS 77151 (D.Conn. 2009). The Court reasoned that the defendant's "interactive, commercial website invites consumers 'from any state,' including Connecticut to purchase its products. By operating a commercial website to promote and sell its goods, Defendant has extended itself beyond its home state . . . to avail itself of of the benefits of doing business in Connecticut.

**Reasonableness**.

Requiring Fiesta Palms to defend itself in Connecticut is also consistent with fair play and substantial justice. Moreover, nothing the affidavit submitted by Fiesta Palms suggests that maintaining jurisdiction in Connecticut would be unreasonable or would otherwise offend notions of fair play and substantial justice. <u>See</u> <u>Johnsen Fretty & Co v. Lands South</u>, LLC, 526 F. Supp.2d 307, 314 (D.Conn. 2007). Rather, defendant's memorandum simply states that the geographic distance is substantial in support of its argument.

In the instant case, defendant is large and profitable resort, clearly possessing the resources to travel to Connecticut. Nothing in the affidavit submitted by defendant suggests that the distance would create a substantial hardship to it. In sharp contrast, plaintiff is an individual of limited means. The defendants are persons and entities located in Connecticut, Rhode Island, Massachusetts, New York, Nevada and California. None of the other defendant's have challenged jurisdiction via a motion. Consequently, it would be contrary to judicial efficiency to force plaintiff to bring a separate action in Nevada against Fiesta Palms.

Moreover, defendant is mistaken when it states in its memorandum that all other parties aside from the plaintiffs have no ties to Connecticut.  For one, Defendant Club 960, is a Connecticut company that operates a nightclub in Hartford Connecticut.

This case has strong ties to Connecticut.  Indeed, this is where plaintiff developed his brand and his mark beginning in the 1970's.  There is not doubt that a significant aspect of this litigation will center around first use, length of use and continuity of use of the mark by plaintiff.  This issue will center around evidence and witnesses located in Connecticut, certainly not Nevada.

In short, defendant has failed to offer any evidence to meet its burden that it would be unreasonable to maintain jurisdiction in Connecticut.

**4.     Plaintiff Seeks the Opportunity to Conduct Discovery Regarding Defendant's Marketing Efforts to Connecticut Residents, Via Publications Distributed to Connecticut Residents.**

In addition to the jurisdictional basis which has been described above, discovery will further strengthen the jurisdictional claim.  Plaintiff believes that discovery will yield proof that Palms specifically marketed, either through direct mailing or electronic communications, or through publications that reach Connecticut residents.  Plaintiff is also confident that discovery will eventually prove that Palms actually sold its product to Connecticut residents via its nationally targeted website.  In addition, plaintiff seeks to identify via discovery directed at "Google", and other search engines, whether through metatags, sponsored words, or geographical focus, whether Palms made any effort to target Connecticut residents.  Plaintiff suspects that it did, and merely seeks the opportunity to acquire the proof.

Acquisition of this additional targeting, although hardly necessary given the commercial and active nature of Palms' website, will further strengthen the jurisdictional claim.  Personal jurisdiction over a foreign corporation was exercised based on the fact that defendant corporation advertised approximately once a month for four month in the Wall Street Journal "and on at least two other occasions ran similar ads."  McFaddin v. National Executive Search, Inc., 354 F. Supp. 1166, 1169 (D. Conn. 1973).  In denying the defendants motion to dismiss for lack of personal jurisdiction, this Court held that "the placing of at least six franchise ads over a six-month period in a newspaper whose circulation clearly includes Connecticut...demonstrates a sufficiently repetitious pattern to satisfy [C.G.S. §33-929(f)(2)]."  Id.  This court also found sufficiently repetitious solicitation by a foreign corporation who "did not specifically target a sales campaign to Connecticut, [but] engaged the services of a national marketing and distribution company, with the knowledge and belief that one of the territories it covered was Connecticut."  Whelen Engineering Company, Inc. v. Tomar Electronics, Inc., 672 F. Supp. 659, 663, (D. Conn. 1987).

These are just two examples ways that jurisdiction was found.  The analytical framework in Ball likely contemplates the need to conduct discovery in order to establish jurisdiction.

**IV**.     **CONCLUSION**

Plaintiff has alleged, and indeed presented some initial proof of the basis for jurisdiction. Defendant's website amounts to solicitation in Connecticut and commercial activity in Connecticut.  Defendant's use of a trademarked name on its website amounts to the commission of a tort in Connecticut, as well as conduct that causes injury in Connecticut.  For these reasons, plaintiff respectfully objects to Defendant's Motion to Dismiss.

Respectfully submitted,


_____/s/_____
Jose M. Rojas, Esq
The Rojas Law Firm, LLC
Federal Bar No. ct 22569
40 Russ Street
Hartford, CT 06106
(860) 232-3476
(866) 321-2422 (fax)
rojas@therojaslawfirm.com


**CERTIFICATE OF SERVICE**

I hereby certify that on the above date a copy of the foregoing was filed electronically. All parties of record will receive an electronic copy of same via the CM/ECF System.

_____/s/_____
Jose M. Rojas, Esq
The Rojas Law Firm, LLC
Federal Bar No. ct 22569
40 Russ Street
Hartford, CT 06106
(860) 232-3476
(866) 321-2422 (fax)
rojas@therojaslawfirm.com