## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
--------------------------------x
PAUL LIS and                    :
DJ PAULIE BROADCASTING, LLC,    :
                                :
          Plaintiffs,           :
                                :
v.                              :   CASE NO. 3:11CV01057(AWT)
                                :
PAUL DELVECCHIO, JR., 495       :
PRODUCTIONS, VIACOM, INC. d/b/a :
MTV Networks, UMG RECORDINGS,   :
INC., FIESTA PALMS LLC d/b/a    :
Palms Casino Resort,            :
BASKIN-ROBBINS INC.,            :
HEARST COMMUNICATIONS, INC.,    :
ROOM960 LLC, and 1-999 JOHN DOES,:
                                :
          Defendants.           :
                                :
--------------------------------x
```

### RULING ON MOTION TO DISMISS

Plaintiffs Paul Lis ("Lis") and DJ Paulie Broadcasting, LLC ("DJ Paulie Broadcasting") bring this action against defendant Paul Delvecchio, Jr. ("Delvecchio") and several co-defendants, including Fiesta Palms, LLC ("Palms"), alleging, inter alia, trademark infringement. Palms has moved to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons set forth below, the motion is being denied.

## I.   FACTUAL ALLEGATIONS

Lis is a Connecticut resident with a place of business in South Windsor, Connecticut. DJ Paulie Broadcasting is a

1

Connecticut limited liability company with a principal place of business also located in South Windsor.  Defendant Palms is a Nevada limited liability company with a principal place of business in Las Vegas, Nevada.

Lis is a professional disc jockey.  Since 1971, Lis has performed on radio shows and at live appearances under the name "DJ PAULIE."  On May 1, 2008, Lis filed an application to register the mark "DJ Paulie" with the United States Patent and Trademark Office.  The mark was registered on January 12, 2010.  Also on May 1, 2008, Lis filed an application to register the mark "DJ Paulie's Worldwide Countdown" with the United States Patent and Trademark Office.  This mark was registered on September 21, 2010.

Starting in 2009, Delvecchio appeared on a reality television series titled "Jersey Shore" and airing on MTV Network, a subsidiary of Viacom, Inc.  The show has gained considerable popularity, and with it, the name and reputation of Delvecchio have become widely recognized.  On the show, Delvecchio promotes himself as a disc jockey under the name "DJ Pauly" and "DJ Pauly D."  The plaintiffs allege that the defendants have used their market power to promote Delvecchio to a national audience under the infringing name of "DJ Pauly D," harming the plaintiffs by damaging Lis's image and brand name, "DJ Paulie."

Palms was joined as a contributory infringer for allegedly advertising and promoting Delvecchio under his pseudonym "DJ Pauly D" as a star performer at one of Palms's Las Vegas entertainment venues.

## II.  LEGAL STANDARD

On a Rule (12)(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996), <u>cert. denied</u>, 519 U.S. 1006 (1997).  Where a defendant challenges "only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a <u>prima facie</u> showing of jurisdiction."  <u>Ball v. Metallurgie Hoboken-Overpelt, S.A.</u>, 902 F.2d 194, 197 (2d Cir. 1990).  "[W]hen a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, . . . [t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."  <u>Seetransport Wiking Trader Schiffarhtsegesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala</u>, 989 F.2d 572, 580 (2d Cir. 1993) (quoting <u>Taylor v. Phelan</u>, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam), <u>cert. denied</u>, 498 U.S. 1068 (1991)).  However, "[i]f the parties present conflicting

affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Id.  On a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as any documents upon which the complaint relies and which are integral to the complaint."  Subaru Distrib. Corp. v. Subaru of America, Inc., 425 F.3d 119, 112 (2d Cir. 2005).

**III. DISCUSSION**

    **A.  Connecticut Long-Arm Statute**

The plaintiffs contend that jurisdiction over Palms is appropriate under two separate Connecticut long-arm statutes: Conn. Gen. Stat. § 33-929(f), which addresses jurisdiction over foreign corporations; and Conn. Gen. Stat. § 52-59b, which addresses jurisdiction over nonresident individuals, foreign partnerships and foreign voluntary associations.  Neither of these statutes expressly addresses foreign LLCs.  However, in Austen v. Catterton Partners V, LP, 729 F. Supp. 2d 548, 553-59 (D. Conn. 2010), the court, after a thorough analysis, concluded that Conn. Gen. Stat. § 52-59b addresses jurisdiction over foreign LLCs and Conn. Gen. Stat. § 33-929(f) does not, and the court adopts the reasoning in Austen.

The exercise of long-arm jurisdiction under Connecticut law

requires a two-part inquiry.  "First, we must determine whether
the defendant is amenable to service of process under
Connecticut's long-arm statute.  Second, we must assess whether
the statutory authority comports with due process."  Edberg v.
Neogen Corp., 17 F. Supp. 2d 104, 110 (D. Conn. 1998).  See also
Thomason v. Chem. Bank, 234 Conn. 281, 295 (1995) ("Most
importantly, we always have held that the exercise of long arm
jurisdiction in this state requires a two part inquiry: first,
whether jurisdiction is permitted by the statute, and second,
whether jurisdiction is permitted by the federal constitution.").

The plaintiffs claim that this court has jurisdiction over
Palms under Conn. Gen. Stat. §§ 52-59b(a)(2) and (a)(3)(A), which
provide:

> As to a cause of action arising from any of
> the acts enumerated in this section, a court
> may exercise personal jurisdiction over any
> nonresident individual, foreign partnership,
> or foreign voluntary association, who in
> person or through an agent: . . . (2) commits
> a tortious act within the state . . . ; [or]
> (3) commits a tortious act outside the state
> causing injury to person or property within
> the state . . . if such person or agent (A)
> regularly does or solicits business, or
> engages in any other persistent course of
> conduct, or derives substantial revenue from
> goods used or consumed or services rendered,
> in the state, . . .

Conn. Gen. Stat. § 52-59b(a).

### 1.   **52-59b(a)(2) (Tortious Act Within the State)**

Under Conn. Gen. Stat. § 52-59b(a)(2), in order to be

subject to personal jurisdiction a defendant must commit a
tortious act within the state that gives rise to the cause of
action.

In analyzing personal jurisdiction in the Internet context,
many courts have adopted the "spectrum of internet activity"
analysis first articulated in <u>Zippo Mfg. Co. v. Zippo Dot Com,
Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997).  In <u>Zippo</u>, the court
stated:

> At one end of the spectrum are situations
> where a defendant clearly does business over
> the Internet.  If the defendant enters into
> contracts with residents of a foreign
> jurisdiction that involve the knowing and
> repeated transmission of computer files over
> the Internet, personal jurisdiction is proper.
> At the opposite end are situations where a
> defendant has simply posted information on an
> Internet Web site which is accessible to users
> in foreign jurisdictions.  A passive Web site
> that does little more than make information
> available to those who are interested in it is
> not grounds for the exercise of personal
> jurisdiction.  The middle ground is occupied
> by interactive Web sites where a user can
> exchange information with the host computer.
> In these cases, the exercise of jurisdiction
> is determined by examining the level of
> interactivity and commercial nature of the
> exchange of information that occurs on the Web
> site.

<u>Id.</u> at 1124 (internal citations omitted).

The <u>Zippo</u> test has since been recognized as the "seminal
authority regarding personal jurisdiction based upon the
operation of an Internet website."  <u>Toys "R" Us, Inc. v. Step</u>

6

Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003).  The Second Circuit adopted the Zippo scale in analyzing whether a defendant had transacted business within New York under that state's analogous long-arm statute.  See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 251-54 (2d Cir. 2007).

In addition, decisions in this district have adopted the Zippo test in determining whether the exercise of personal jurisdiction is proper, both for purposes of the long-arm statute inquiry and the due process inquiry.  See Broad. Mktg. Int'l, Ltd. v. Prosource Sales and Mktg., Inc., 345 F. Supp. 2d 1053, 1062 (D. Conn. 2004) (concluding that jurisdiction exists after finding that the defendant's website falls in "the middle ground" of interactivity on the Zippo scale); On-Line Techs. V. Perkin Elmer Corp., 141 F. Supp. 2d 246, 265 (D. Conn. 2001) ("most courts follow the lead of [Zippo] and determine whether jurisdiction is proper by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site") (internal quotation omitted); Am. Homecare Fed'n, Inc. v. Paragon Scientific Corp., 27 F. Supp. 2d 109, 113-14 (D. Conn. 1998) (classifying website as "passive" on the Zippo scale and therefore insufficient to support jurisdiction).

The plaintiffs have made a sufficient showing that Palms's website falls into at least the "middle ground" of interactivity on the Zippo scale.  The plaintiffs allege that "the defendant,

Paul Delvecchio, Jr., is advertised and promoted as the current resident DJ at the famous Palms Casino in Las Vegas, Nevada, which advertising is attached . . . ." (Compl. (Doc. No. 1) ¶ 35.) The plaintiffs then attach as Exhibit R-1 to the Complaint a June 25, 2011 screenshot of the Palms Casino Resort website advertising "DJ PAULY D" on "FRIDAY, JUNE 24." (See Compl., Ex. R-I - PALMS CASINO RESORT webpage 06/25/2011 (Doc. No. 1-2).) The screenshot shows a banner at the top where it appears that viewers can select "Check In" and "Check Out" dates to reserve hotel rooms at the Palms. The plaintiffs also attach as Exhibits S-1 and S-2 screenshots of the Palms's website advertising "PAULY D" which appears to have a link for buying tickets. (Id.)

Palms has not presented any argument or evidence that refutes these assertions. Palms merely states in its reply that the website banner allowing viewers to reserve flights and hotels at Palms "merely suggests that someone, it is not clear who, uses Palms' site to allow online users to make hotel reservations or book a flight." (Def. Fiesta Palms, LLC's Reply Mem. Resp. Pls.' Opp'n to Mot. to Dismiss ("Def.'s Reply") (Doc. No. 91) 9.) In a footnote, Palms argues that "[t]he option to book flight reservations suggests that this banner is not sponsored by Palms, but rather, by an online travel vendor, capable of booking both rooms and flights." (Id. at 9, n. 9.) Also, in an affidavit Palms states that the version of the web page attached to the

8

Complaint is an older version.  However, Palms fails to provide
evidence that refutes the plaintiffs' showing in any material
respect.  Also, "all pleadings and affidavits are construed in
the light most favorable to [the] plaintiff, and where doubts
exist, they are resolved in the plaintiff's favor," Hoffritz for
Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985).
The court concludes that the plaintiffs have made an adequate
showing at this stage of the case that, at the time in question,
Palms operated an interactive website whereby Connecticut
residents could purchase from their home computers hotel
accommodations and tickets offered by Palms.  Thus, this activity
can be considered to have taken place "within the state" for
purposes of Conn. Gen. Stat. § 52-59b(a)(2).  See
Indiaweekly.com, LLC. v. Nehaflix.com, Civil Action No. 3:07-cv-
194 (VLB), 2008 WL 687268, at *2 (D. Conn.  Mar. 10, 2008)
("Tortious conduct on a website may create a basis for personal
jurisdiction if the website provides a sufficient link between
the entity selling products through the site and individuals in
the forum state.").  Accordingly, the court finds that Palms's
alleged contributory infringement could have taken place within
the state, and that Palms has failed to rebut the plaintiffs'
prima facie showing of jurisdiction under Conn. Gen. Stat. § 52-
59b(a)(2).

## 2.   52-59b(a)(3)(A) (Tortious Conduct Outside the State Causing Injury Within the State)

For the court to exercise personal jurisdiction under Conn. Gen. Stat. § 52-59b(a)(3)(A), Palms must have committed a tortious act outside the state causing injury to person or property within the state and Palms must have regularly conducted or solicited business, or engaged in any other persistent course of conduct within the state.

The initial inquiry is whether an injury occurred within the state.  Palms cites to cases utilizing the "critical events" test in support of its assertion that the plaintiffs suffered no injury within the state.  See Greene v. Sha-Na-Na, 637 F. Supp. 591, 597 (D. Conn. 1986) (exercise of personal jurisdiction improper in trademark infringement action because the critical events--formation of new partnership using trademarked name and performances of new group--took place outside Connecticut). However, Sha-Na-Na, the case on which Palms chiefly relies, was decided before the development of the Internet and its consequent impact on trademark law.

The Second Circuit has observed that "attempting to apply established trademark law in the fast-developing world of the Internet is somewhat like trying to board a moving bus." Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). See also Mashantucket Pequot Tribe v. Redican, 309 F. Supp. 2d 309, 315 n. 6 (D. Conn. 2004) ("The court finds the same is true

when attempting to apply traditional notions of personal
jurisdiction.") (quoting Millenium Enters, Inc. v. Millenium
Music, LP, 33 F. Supp. 2d 907, 914 (D. Or. 1999)).  Thus, the
"critical events" test may not be best-suited for this type of
jurisdictional inquiry.  See Redican, 309 F. Supp. 2d at 316.
See also Virgin Enters. Ltd. v. Virgin Eyes LAC, No. 08 CV
8564(LAP), 2009 WL 3241529, at *5 n. 6 (S.D.N.Y. Sept. 30, 2009)
(applying the situs-of-injury test in analyzing jurisdiction
under New York's analogous long-arm statute and noting that "[i]n
trademark cases, the first effects of trademark infringement or
dilution are typically felt where the trademark owner resides and
conducts business.") (internal citation omitted); Zartolas v.
Nisenfeld, 184 Conn. 471, 474 (1981) ("[I]n enacting 52-59b, the
legislature used New York Civil Practice Law s 302 (McKinney
1980-81 Supp.) as a model.  We therefore find pertinent the
judicial interpretation given to that New York statute.")
(internal citations omitted).

     This court concludes it is appropriate to use the "situs-of-
injury" test rather than the "critical events" test under the
circumstances of this case.  Because the situs of the injury here
is Connecticut, where the plaintiffs reside and where they
chiefly conduct business, the situs of the plaintiffs' injury is
within the state under Conn. Gen. Stat. § 52-59b(a)(3)(A).

     The second part of the inquiry under § 52-59b(a)(3)(A)

requires the court to determine whether Palms regularly does or solicits business within the state.  Again, the court looks to the Zippo scale of interactivity to determine whether Palms's web presence constitutes regular business activity within the state. See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 251-52 (2d Cir. 2007) (explaining that website's interactivity assists inquiry into whether a defendant has transacted business or purposefully availed himself of the privilege of doing business in a state). In light of the plaintiffs' showing that Palms operates an interactive website whereby Connecticut residents may purchase hotel accommodations and tickets from their home computers, the court finds that the plaintiffs have shown that Palms regularly does or solicits business within the state under § 52-59b(a)(3)(A).

   **B.   Due Process Inquiry**

   The second part of the jurisdictional analysis requires the court to determine whether the exercise of jurisdiction over Palms is consistent with due process.  See Sha-Na-Na, 637 F.Supp. at 595.  "A two-step analysis is used when determining whether the exercise of personal jurisdiction would offend Due Process: (1) does the defendant have minimum contacts with the forum; and, if, so, (2) does the assertion of jurisdiction comport with traditional notions of fair play and substantial justice." In Re Perrier Bottled Water Litig., 754 F. Supp. 264, 267-68 (D. Conn.

1990) (citing <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286 (1980)).

### 1. **Minimum Contacts**

"'[T]he constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established 'minimum comtacts' in the forum State.'" <u>Asahi Metal Indus. Co. v. Superior Court</u>, 480 U.S. 102, 108-09 (1987) (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)).  Thus, evaluating Palms's minimum contacts with Connecticut requires a determination of whether there has been some act by Palms to purposefully avail itself of the privilege of doing business in the forum state such that it has invoked the benefits and protections of its laws.  <u>Asahi</u>, 480 U.S. at 108-09 (citing <u>Burger King</u>, 471 U.S. at 475).  "Jurisdiction is proper, . . . , where the contacts proximately result from actions by the defendant <u>himself</u> that create a 'substantial connection' with the forum State."  <u>Burger King</u>, 471 U.S. at 475 (citing <u>McGee v. Int'l Life Ins. Co.</u>, 355 U.S. 220, 223 (1957)).

Courts look to <u>Zippo</u> to determine whether a defendant has purposefully availed itself of the privilege of conducting business in the forum state via an Internet website.  See <u>Zippo Mfg. Co. V. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997).  It should be recognized, however, that <u>Zippo</u> did not

create a separate test for analyzing jurisdiction based on a defendant's Internet presence.  Rather, Zippo stated that its "sliding scale is consistent with well developed personal jurisdiction principles."  Id. at 1124.  Thus, applying the Zippo sliding scale of interactivity is merely the use of a new tool to measure a defendant's commercial activity within the forum state via its website which is then to be applied to traditional jurisdiction principles.

As discussed above, Palms had, at the time in question, a website where Connecticut residents could purchase hotel accommodations at the Palms Casino Resort and tickets to shows.  Palms had therefore taken it upon itself to conduct business with Connecticut residents over the Internet, thus establishing a substantial connection with Connecticut.  Such action was purposeful availment of the privilege of conducting business in Connecticut and was of a continuing and systematic nature sufficient to support general personal jurisdiction.  See generally ICG America, Inc. v. Wine of the Mouth Club, Inc., No. 3:09-cv-133 (PCD), 2009 WL 2843261, at *7 (D. Conn. 2009) ("Defendant purposefully availed itself to the privilege of doing business in Connecticut.  Its interactive, commercial website invites consumers 'from any state,' including Connecticut, to purchase its products.  By operating a commercial website to promote and sell its goods, Defendant has extended itself beyond

14

its home state of California to avail itself of the benefits of
doing business in Connecticut.") (citation omitted);
Indiaweekly.com, Civil Action No. 3:07-cv-194 (VLB), 2008 WL
687268, at *4 (D. Conn. 2008) ("Courts in this district have held
that exercising personal jurisdiction over defendants based on
the presence of an active website does not offend due process.");
National Football League v. Miller, No. 99 CIV. 11846 JSM, 2000
WL 335566, at *1 (S.D.N.Y. 2000) ("[O]ne who uses a web site to
make sales to customers in a distant state can thereby become
subject to the jurisdiction of that state's courts.").

     The cases relied on by Palms are not to the contrary.  Palms
cites Edberg for the proposition that mere presence on the
Internet is never enough to justify a court's exercise of general
jurisdiction.  See Edberg v. Neogen Corp., 17 F. Supp. 2d 104,
115 (D. Conn. 1998) ("If jurisdiction were [to] be based upon a
defendant's mere presence on the Internet, this would lead to a
defendant's being subjected to jurisdiction on a worldwide basis
and would eviscerate the personal jurisdiction requirements as
they currently exist.").  However, as discussed above, Palms did
not merely have an Internet presence, but maintained an
interactive website whereby it invited Connecticut Internet users
to conduct business with it via the website.

     2.   **Fair Play and Substantial Justice**

     The second part of the due process inquiry requires an

assessment of whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice.  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).  This inquiry is framed by the following five factors: "1) the burden that the exercise of jurisdiction will impose on the defendant; 2) the interests of the forum state in adjudicating the case; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and 5) the shared interest of the states in furthering substantive social policies."  Id. (citing Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 113-14 (1987)).

All factors, with perhaps the exception of the fifth, weigh in favor of the conclusion that the court's exercise of jurisdiction over Palms is consistent with fair play and substantial justice.  It is undisputed that Palms is a famous casino and resort, and its website suggests that it is a very substantial business.  Any burden on Palms by requiring it to defend suit in Connecticut is therefore insubstantial.

The forum state has an interest in seeing the intellectual property rights of its citizens vindicated.  The plaintiffs' interest in this case is a very significant one for them, and the history of the allegedly infringed mark centers around the

16

plaintiffs' actions in Connecticut.  Requiring the plaintiffs to litigate this case in two separate forums would be inconvenient for them, if not unduly burdensome.  Moreover, the judicial system's interest would be vindicated by subjecting Palms to jurisdiction in this forum, as the other defendants in this case will be defending the plaintiffs' claims in Connecticut. Duplicative litigation in another forum would be a waste of judicial resources.  Therefore, the court finds that asserting jurisdiction over Palms comports with due process and is not contrary to notions of fair play and substantial justice.

## IV.  CONCLUSION

For the foregoing reasons, the plaintiffs have made a <u>prima facie</u> case as to the proper exercise of personal jurisdiction by this court over defendant Palms, and Palms has not shown that its activities via its website are insufficient to satisfy the requirements of Connecticut's long-arm statute, nor that exercising personal jurisdiction over Palms because of such activities would violate principles of due process.  Accordingly, Defendant Fiesta Palms, LLC's Motion To Dismiss For Lack of Personal Jurisdiction (Doc. No. 75) is hereby DENIED.

It is so ordered.

Signed this 13th day of August, 2012 at Hartford,

Connecticut.

                                        /s/
                              _____
                                   Alvin W. Thompson
                              United States District Judge